UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
DEMOS P. DEMOPOULOS, ANTHONY STORZ, LUIS HERRERA, ROBERT HOLDEN, SCOTT LITTLE, and PETER INGRAHAM as Trustees and Fiduciaries of the LOCAL 807 LABOR-MANAGEMENT PENSION FUND,

                            Plaintiffs,

- against -

SHOWTIME ON THE PIERS, LLC,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**REPORT AND RECOMMENDATION**

22 Civ. 5584 (AMD) (VMS)

**Vera M. Scanlon, United States Magistrate Judge:**

The trustees and fiduciaries of the Local 807 Labor-Management Pension Fund ("Plaintiffs"), commenced this action against Showtime on the Piers, LLC ("Defendant") (together with Plaintiffs, the "Parties") on September 19, 2022. See generally ECF No. 1. Plaintiffs seek to recover withdrawal liability, as well as interest, liquidated damages and attorneys' fees and costs against Defendant pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), the collective bargaining agreements to which the parties were bound, and the trust agreement (the "Agreement") to which the Parties were bound and which governs the Local 807 Labor-Management Pension Fund (the "Fund"). See id.

Before this Court and on referral from the Honorable Ann M. Donnelly is Plaintiffs' motion for default judgment against Defendant pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure ("FRCP"). See Motion for Default, ECF No. 23. For the reasons set forth below, the Court respectfully recommends that the motion for default judgment be granted in part and denied in part.

1

I.     BACKGROUND

    A. Factual Background

The following facts are taken from Plaintiffs' complaint (the "Complaint") and, as to liability, considered true for the purposes of this motion for a default judgment. See generally ECF No. 1.

The Fund is an employee benefit plan within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3). See ECF No. 1 ¶ 4. It was established pursuant to the terms of various collective bargaining agreements between Local 553, the International Board of Trustees ("I.B.T.") and its predecessor, Local 807, a labor organization representing employees in an industry affecting commerce, on one hand, and various employers which are required to make contributions to the Fund on behalf of their employees covered by the collective bargaining agreements, on the other hand. See id. The Fund provides various pension benefits to covered employees, retirees and their dependents, and it is operated pursuant to the terms of the Agreement. See id. The Trustees are the "plan sponsor" within the meaning of Section 3(16)(B)(iii) of ERISA, 29 U.S.C. § 1002(16)(B)(iii), and are fiduciaries of the Fund, as defined by Section 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). See id. ¶ 6.

Defendant, a New York corporation, was a party to and bound by a series of collective bargaining agreements with Local 807, I.B.T. or its successor union, Local 553, I.B.T. See id. ¶¶ 7, 9. The Fund's records indicate that Defendant either permanently ceased to have an obligation to contribute to the Fund or permanently ceased all covered operations as of March 31, 2020. See id. ¶ 12. Under ERISA, Section 4201, 29 U.S.C. § 1381, Defendant must pay withdrawal liability to the Fund for its proportionate share of the Fund's unfunded vested benefits. See id. ¶ 13. On March 15, 2022, the Fund sent Defendant a written demand for payment of its

withdrawal liability, including a payment schedule, according to which Defendant was obligated to pay eighty quarterly payments of $7,432.75 per quarter, with the first payment due on or before April 1, 2022, amounting to a total of $446,565.00.[1]  See id. ¶¶ 14-15; ECF No. 23-2 at 45.  Defendant failed to make the initial quarterly payment by April 1, 2022, and failed to make any payment by the commencement of this action in September 2022.  See id. ¶¶ 17-18.

### B. Procedural Background

Plaintiffs commenced this action against Defendant on September 19, 2022.  See generally ECF No. 1.  On September 21, 2022, this Court scheduled an initial conference with the Parties for January 25, 2023.  See ECF No. 5.  On October 6, 2022, a process server served Defendant by leaving two copies of the summons and Complaint with an authorized agent of the Secretary of State of the State of New York.  See ECF No. 6.  On January 5, 2023, Plaintiffs moved to adjourn the initial conference and for an extension of time to serve Defendant because Plaintiffs claimed they failed to serve Defendant "with the Complaint within the 90-day period under Rule 4(M), which would have been December 18, 2022."[2]  ECF No. 7.  This Court granted Plaintiffs' motion for an extension of time to serve Defendant until January 31, 2023, and rescheduled the initial conference for April 6, 2023.  See Dkt. Entry 1/6/2023.  Plaintiffs timely served Defendant with the summons and Complaint.  See ECF No. 9.  On March 24, 2023, Plaintiffs filed a second motion to adjourn the initial conference, which this Court granted and rescheduled the conference for May 16, 2023.  See ECF No. 10; Dkt. Enty 4/6/2023.

---

[1] Although Plaintiffs determined that eighty (80) quarterly payments of $7,432.75 amount to $446,565.00, the Court has calculated that Defendant's quarterly payments amount to $5,582.06 each ($446,565.00 / 80 = $5,582.06).

[2] After reviewing the initial affidavit of service that Plaintiffs filed on the docket on October 12, 2022, as well as Plaintiffs' letter motion to adjourn, it remains unclear to the Court as to why Plaintiffs determined they had to renew service upon Defendant in January 2023.  See ECF Nos. 6-7, 9.

On May 11, 2023, Plaintiffs filed a request for a certificate on default against Defendant due to its failure to appear in this action. See ECF No. 11. On that same day, Plaintiffs filed a third motion to adjourn the initial conference due to Defendant's non-appearance. See ECF No. 12. This Court granted Plaintiffs' motion, rescheduled the initial conference and converted it to an in-person default conference for May 23, 2023. See Dkt. Order 5/11/2023. This Court ordered Plaintiffs to file proof of service of the default conference Scheduling Order and of the docket sheet upon Defendant by May 16, 2023. See id. Plaintiffs failed to timely file proof of service on the docket and failed to appear for the default conference on May 23, 2023. See Dkt. Orders 5/19/2023 & 5/23/2023.

On June 1, 2023, Plaintiffs' counsel addressed a letter to this Court explaining the reason for his non-appearance at the default conference and requesting that the Court extend Plaintiffs' deadline to file proof of service of the Court's May 11, 2023 Order and the docket sheet. See ECF No. 14. Plaintiffs' counsel's letter also stated that "Defendant's business has been nonoperational for several years and mail to its business address, 711 12th Avenue, New York, NY 10019, is routinely returned to sender." Id. Counsel requested "that the Court authorize Plaintiffs to serve the principal Chuck Newman's residence at 55 Beach Lane, Westhampton Beach, New York 11978," and "that the Court allow service to be performed by first class and certified mail due to the difficulty of serving what appears to be a gated community." Id. The Court rescheduled the default conference for July 20, 2023, and ordered that Plaintiffs serve copies of the Scheduling Order and the docket sheet to Defendant's business address and to the principal's residence via first class and certified mail. See Dkt. Orders 6/05/2023 & 6/20/2023. This Court also mailed copies of its June 20, 2023 Order and the docket sheet to Defendant at 711 12th Avenue, New York, NY 10019, and at 55 Beach Lane, Westhampton, NY 11978. See

4

Dkt. Order 6/20/2024.  The default conference was rescheduled for July 26, 2023.  See Dkt. Order 7/11/2023.  Plaintiffs timely filed a certificate of service on the docket of the docket sheet and this Court's May 11 and July 11, 2023 Orders.  See ECF No. 18.

Following Defendant's failure to appear for the July 26, 2023 default conference, this Court ordered that Plaintiffs file a motion for default judgment by September 19, 2023.  See Dkt. Order 7/26/2023.  The Court granted Plaintiffs' motion for an extension of time to file a motion for default judgment until October 12, 2023.  See ECF No. 19; Dkt Order 9/7/2023.  On October 11, 2023, Plaintiffs moved for a second extension of time to file a motion for default on the basis that, in an analogous case against Defendant pending before the Honorable Pamela Chen, "the United States Postal Service returned a forwarding address for Defendant's principal Chuck Newman at 13924 Marquesas Way, Apt. 2324, Marina del Rey, CA 90292-6021."  See ECF No. 20.  The Court granted Plaintiffs' second motion for an extension of time to file a motion for default judgment until October 20, 2023, and the Court mailed a copy of its Order and the docket sheet to Defendant at the new forwarding address.  See Dkt. Order 10/13/2023.

On October 19, 2023, Plaintiffs filed the instant motion for a default judgment.  See ECF No. 23.  Plaintiffs seek judgment against Defendant in the amount of $707,190.60,[3] plus per diem interest in the amount of $220.22 from October 20, 2023, until the day judgment is entered.  See ECF No. 23-3 at 1.  Plaintiffs timely served the motion for a default judgment on Defendant.  See ECF No. 24.  The District Judge referred the motion for a default judgment to this Court for a report and recommendation.

---

[3] The total amount Plaintiffs seek to recover from Defendant includes $446,565.00 in withdrawal liability; $124,756.80 in interest on the withdrawal liability; $124,756.80 in additional interest on the withdrawal liability; $10,650.00 in attorney's fees; and $462.00 in costs.  See ECF No. 23-3 at 1.

5

On May 31, 2024, Plaintiffs filed a letter confirming that Defendant's principal received mail sent to Showtime on the Piers, LLC c/o Chuck Newman, 13924 Marquesas Way, Apt. 2324, Marina del Rey, CA 90292-6021, and that Plaintiffs had served the motion for a default judgment upon Defendant at that address. See ECF No. 26.

Having reviewed the motion for a default judgment, this Court scheduled a July 17, 2024 telephone conference with Plaintiffs' counsel Leo Gertner to discuss the reasonableness of his requested hourly rate for attorneys' fees, as well as counsel's proposed use of a blended rate for those fees. See Dkt. Order 7/15/2024; Dkt. Entry 7/17/2024; ECF No. 27. In its Scheduling Order, the Court noted that Mr. Gertner, an associate at the law firm Friedman & Anspach, "requests a total of $10,650.00 in attorney's fees, which amount he claims is based on a $600/hour-rate, 'a blended rate that encompasses work performed by both partners and associates at the firm.'" See Dkt. Order 7/15/2024 (citing ECF No. 23-4 at 8). The Order noted that "[t]he copy of counsel's invoice shows that the billing work was calculated at a $600/hour-rate but only for Mr. Gertner's professional services. The invoice does not show that any of the work was performed by other attorneys, be they partners or associates." Id.

During the Court conference, Mr. Gertner stated that he graduated from law school in 2016. See ECF No. 27 at 7:9-10. At the commencement of this action, Mr. Gertner thus had around six years of professional experience as a lawyer. Mr. Gertner presently has about eight years of experience. As reflected in the written transcript from the July 17, 2024 conference, Mr. Gertner's firm has represented plaintiffs in default motions in ERISA cases before the Eastern District of New York on at least two separate occasions. See ECF No. 27 at 6:4-11; 7:3-16. In the first case, Durso et al v. Almonte Beach Food Corp. (2:17 Civ. 6673), District Judge Brown granted the plaintiff's counsel's attorneys' fees at a rate of $380 per hour for associates and

6

$515.00 per hour for partners.  See Durso et al v. Almonte Beach Food Corp. (2:17 Civ. 6673), ECF No. 38 ¶ 4; Dkt. Order 8/5/2021.  Judge Brown found that these rates were "reasonable in light of the issues raised in the litigation, the expertise required to litigate ERISA matters, and the prevailing rates in the District."  Dkt. Order 8/5/2021.  In the second case, Trustees of Loc. 807 Lab.-Mgmt. Pension Fund v. Showtime on the Piers, LLC, No. 21 Civ. 3677 (PKC) (JRC), 2023 WL 2969298 (E.D.N.Y. Mar. 6, 2023), report & recommendation adopted (E.D.N.Y. Mar. 21, 2023), the plaintiff was represented by three counsel from the law firm Friedman & Anspach, including Mr. Gertner, and by Susan Bruno, a partner at Cary Kane, LLP.  Magistrate Judge Cho found that "[b]ased on rates generally charged in this District for the type of work in connection with an ERISA default . . . the rates for Ms. Bruno of $520 per hour, and the blended rate of $600 per hour for both partners and the associate attorney with Friedman & Anspach, are not reasonable."  2023 WL 2969298, at *7.  According to Judge Cho's decision, Ms. Bruno "graduated from New York University School of Law in 1987 and has more than 20 years' experience in ERISA litigation."  Id. at *6.  Judge Cho respectfully recommended reducing the requested attorneys' fees from $520 to $450 per hour for Ms. Bruno and the other partners on the case, and at a "rate of $300 per hour for the associate, Leo Gertner."  Id. at *9.  This recommendation was adopted by the District Court.  During the telephonic conference before this Court, Mr. Gertner acknowledged that the requested hourly rate of $600 was unusually high for an associate's work in an ERISA case.  See ECF No. 27 at 5-7.

For the reasons stated below, the Court respectfully recommends that the motion be granted in part and denied in part and that judgment be entered against Defendant in Plaintiffs' favor in the amounts detailed below.

7

## II. DISCUSSION

### A. Entry Of Default Judgment

"The first inquiry by the Court is into service to see if Defendant had notice of the suit." Union Mut. Fire Ins. Co. v. Dibartolomeo, No. 17 Civ. 2662 (JS) (AYS), 2018 WL 4522105, at *4 (E.D.N.Y. Aug. 22, 2018). Under FRCP Rule 4(h)(1), "[u]nless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation . . . must be served in a judicial district of the United States in the manner prescribed by Rule 4(e)(1) for serving an individual; or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant[.]" Under Rule 4(e)(1), an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Section 311 of the New York State Civil Practice Law and Rules ("CPLR") provides that personal service upon a corporation "shall be made by delivering the papers to an officer, director, managing or general agent, or cashier or assistant cashier . . . or to any other agent authorized by appointment or by law to receive service." CPLR § 311.

Rule 55(b)(2) then "imposes a 'two-step process for obtaining default judgment.'" Volman v. Peri Peri 2 LLC, No. 21 Civ. 4449 (RPK) (RER), 2022 WL 21842356, at *2 (E.D.N.Y. Aug. 16, 2022) (citing Priestley v. Headminder, Inc., 647 F.3d 497, 504 (2d Cir. 2011)). First, where a party's failure to respond is "shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, the plaintiff must then petition the court for an entry of default judgment pursuant. See Fed. R. Civ. P. 55(b)(2).

"In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. 'These widely accepted factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented.'" Trustees of Pavers & Rd. Builders Dist. Council Welfare, Pension, Annuity & Loc. 1010 Apprenticeship, Skill Improvement & Training Funds v. PCM Contracting Corp., No. 20 Civ. 1834 (FB) (SJB), 2022 WL 584536, at *3 (E.D.N.Y. Feb. 3, 2022), report & recommendation adopted, No. 20 Civ. 1834 (FB) (SJB), 2022 WL 580959 (E.D.N.Y. Feb. 24, 2022)) (citing Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 96 (2d Cir. 1993)). "As to the second factor, [d]efendant's failure to respond to the [c]omplaint and [p]laintiff's efforts to prosecute its case are sufficient to demonstrate that ignoring the default would prejudice [p]laintiff, 'as there are no additional steps available to secure relief in this Court.'" Union Mut. Fire Ins. Co, 2018 WL 4522105, at *4 (citing Flanagan v. North Star Concrete Constr., Inc., No. 13 Civ. 2300, 2014 WL 4954615, at *7 (E.D.N.Y. Oct. 2, 2014)). "Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, [the third] factor weighs in favor of granting a default judgment." Joseph v. HDMJ Rest., Inc., 970 F. Supp. 2d 131, 143 (E.D.N.Y. 2013).

1. **Service Of Process**

As set forth above, this Court granted Plaintiffs' extension of time to serve Defendant. See ECF No. 7; Dkt. Entry 1/06/2023. On January 11, 2023, Plaintiffs timely served Defendant by delivering two copies of the summons, the Complaint and the docket sheet to an agent of the New York Secretary of State, as an agent authorized by law to receive service of process. See ECF Nos. 8-9. This Court finds that service upon Defendant was proper. In addition, Plaintiffs

9

mailed Defendant multiple Orders at different addresses associated with Defendant and its principal to provide additional notice.  See Dkt. Orders 5/11/2023; 6/1/2023; 6/5/2023; 6/20/2023; 7/11/2023; see ECF Nos. 8-9, 14-15, 18, 24-26.

### 2. Entry Of Default Judgment Is Warranted

In this case, the two-step process under Fed. R. Civ. P. 55(b)(2) is completed in that the Clerk of Court filed an entry of default on the docket.  See ECF No. 13.  Plaintiffs then filed the motion for a default judgment.  See ECF No. 23.

"As discussed above, when determining whether to grant a default judgment, the Court is guided by three factors: whether the defendant's default was willful; whether defendant has a meritorious defense to plaintiff's claims; and whether ignoring the default would prejudice the non-defaulting party."  Union Mut. Fire Ins. Co, 2018 WL 4522105, at *4.

As to the first factor, Defendant's continued failure to appear in this matter is sufficient to constitute willfulness.  See S.E.C. v. McNulty, 137 F.3d 732, 738-39 (2d Cir. 1998) (holding the defendant's non-appearance and failure to respond equated to willful conduct); Indymac Bank v. Nat'l Settlement Agency, Inc., No. 7 Civ. 6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' nonappearance and failure to respond "indicate willful conduct" and granting plaintiff's default judgment against them).  As to the second factor, Defendant's failure to respond to the Complaint and Plaintiffs' repeated efforts to litigate demonstrate that ignoring the default would prejudice Plaintiffs, as there are no additional steps available to secure relief in this Court.  See Union Mut. Fire Ins. Co, 2018 WL 4522105, at *4.  As to the third factor, Defendant's nonappearance prevented it from establishing a meritorious defense. This Court thus finds that a default judgment against Defendant would be proper in the present circumstances because all three factors are satisfied.  The Court now turns to whether liability

exists and, if so, what damages are to be awarded.

### B. Liability

In deciding a motion for default judgment, a court must determine whether the plaintiff's factual allegations, taken as true, constitute a valid claim for which relief can be granted. See City of N.Y. v. Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011). "A party's default is deemed an admission of all well-pleaded allegations of liability." PCM Contracting Corp., 2022 WL 584536, at *4; Greyhound Exhibitgroup, 973 F.2d at 158. "The court must then determine whether the unchallenged facts constitute a legitimate cause of action." Id. (internal citation & quotation marks omitted).

"In enacting the withdrawal liability provisions of ERISA, 'Congress determined that unregulated withdrawals from multiemployer plans could endanger their financial vitality and deprive workers of the vested rights they were entitled to anticipate would be theirs upon retirement. For this reason, Congress imposed withdrawal liability as one part of an overall statutory scheme to safeguard the solvency of private pension plans.'" Div. 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d 593, 606 (E.D.N.Y. 2017) (citing Connolly v. Pension Ben. Guar. Corp., 475 U.S. 211, 227-28 (1986)). "Where an employer either completely or partially withdraws from a plan 'the fund is vested with authority to determine the amount of withdrawal liability. It must then notify the withdrawing employer of its withdrawal liability, set a payment schedule, and formally demand payment.'" Id. at 607 (citing Gesualdi v. Seacoast Petroleum Prods., Inc., 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015)). "[N]otwithstanding an employer's request for review of the plan's withdrawal liability determination, '[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . beginning no later than 60 days after the date of the

11

demand.'" Id. (citing 29 U.S.C. § 1399(c)(2)). If an employer is found to be in default, the plan sponsor "may require immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5); see D & A Bus Co., 270 F. Supp. 3d at 607; Nat'l Pension Plan of the Unite Here Works Pension Fund v. Swan Finishing Co., No. 5 Civ. 6819, 2006 WL 1292780, at *3 (S.D.N.Y. May 11, 2006). "Generally, where a plan sponsor seeks withdrawal liability payments, it must show only that it complied with statutory procedural requirements." D & A Bus Co., 270 F. Supp. 3d at 608.

In this case, the Complaint alleges that "Defendant either permanently ceased to have an obligation to contribute to the Fund or permanently ceased all covered operations as of March 31, 2020." ECF No. 1 ¶ 11. As of the filing date of the Complaint, the Fund calculated Defendant's withdrawal liability to be $446,565.00. See id. ¶ 14. On March 15, 2022, the Fund addressed a letter to Defendant demanding payment of its withdrawal liability, including a payment schedule, according to which Defendant was obligated to pay eighty quarterly payments of $7,432.75 per quarter, with the first payment due on or before April 1, 2022.[4] See id. ¶ 15. Defendant failed to timely make the initial quarterly payment and, as of the filing of the Complaint, Defendant failed to make any subsequent withdrawal liability payment under ERISA. See id. ¶ 17.

Plaintiffs have satisfied the four requirements to trigger full payment of withdrawal liability, so the Court finds that Plaintiffs have demonstrated ERISA liability against Defendant.

---

[4] As noted above, the Court has calculated that Defendant's quarterly payments amount to $5,582.06 per quarter for eighty quarters, rather than $7,432.75 per quarter ($446,565.00 / 80 = $5,582.06).

12

### C. Damages, Interests And Fees

"Generally a party's default is viewed as a concession of all well-pleaded allegations of liability, it is not considered an admission of damages." D & A Bus Co., 270 F. Supp. 3d at 613 (citing Greyhound, 973 F.2d at 158); Gutman v. Klein, No. 3 Civ. 1570, 2010 WL 4975593, at *1 (E.D.N.Y. Aug. 19, 2010) ("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.") (citing Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). "However, where, as here, the damages sought consist, in part, of delinquent withdrawal liability payments and where the employer has otherwise failed to timely request arbitration, courts have the discretion to 'adopt[ ] [ ] the sum proffered by the plan, even in the absence of documentation as to how the figure was calculated.'" Id. (citing Labarbera v. United Crane & Rigging Servs., 8 Civ. 3274, 2011 WL 1303146, at *5 (E.D.N.Y. Mar. 2, 2011)) (adopting the plaintiff's proffered amount of withdrawal liability despite the lack of evidence regarding its calculation); Bd. of Trustees of Loc. 810 Affiliated Pension Fund v. Joseph Eletto Transfer, Inc., No. 23 Civ. 1616 (DLI) (MMH), 2024 WL 628808, at *6 (E.D.N.Y. Feb. 1, 2024) (finding that "the Court retains discretion to adopt the plan's requested amount of unpaid withdrawal liability without any supporting calculations"); Trustees of Leather Goods, Handbags & Novelty Workers' Union Loc. 1 Joint Ret. Fund v. Cent. Fur Storage Co., No. 18 Civ. 7224 (AMD) (RER), 2019 WL 3937132, at *8 (E.D.N.Y. Aug. 2, 2019), report & recommendation adopted, No. 18 Civ. 7224 (AMD) (RER), 2019 WL 3936676 (E.D.N.Y. Aug. 20, 2019).

Under 29 U.S.C. § 1132(g)(2), which sets forth the applicable categories of damages available to a multiemployer pension fund when a participating employer fails to remit contributions (or withdrawal liability payments), a pension plan is required to be awarded (1) the

13

employer's unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to the greater of interest on the unpaid contributions or liquidated damages provided for under the plan in an amount not in excess of 20 percent; (4) reasonable attorney's fees and costs of the action, to be paid by the defendant; and (5) such other legal or equitable relief as the court deems appropriate. See 29 U.S.C. § 1132(g)(2). Pursuant to 29 U.S.C. § 1132(g)(2), the interest rate on unpaid contributions is calculated "using the rate provided under the plan, or, if none, the rate prescribed under Section 6621 of Title 26." 29 U.S.C. § 1132(g)(2). "In the event of a default, a plan sponsor may require . . . accrued interest on the total outstanding liability from the due date of the first payment which was not timely made." 29 U.S.C. § 1399(c)(5).

### 1. Withdrawal Liability

Plaintiffs' motion for a default judgment requests a total of $446,565.00 in withdrawal liability. See ECF No. 23-4 at 6-7. This amount is based on the Fund's calculation of Defendant's withdrawal liability. See id. at 6; ECF No. 1 ¶ 14. Although Plaintiffs did not include documentation as to how the withdrawal liability was calculated, this Court has discretion to adopt the proffered sum in light of Defendant's delinquent withdrawal liability payments. This Court respectfully recommends that Plaintiffs be awarded $446,565.00 in withdrawal liability.

### 2. Interest On Delinquent Withdrawal Liability

Plaintiffs seek to recover $124,756.80 in additional interest, which they claim corresponds to eighteen percent (18%) per annum from April 1, 2022, the date of Defendant's first missed quarterly payment through October 19, 2023, the motion for default's filing date. See ECF No. 23-4 at 8. According to Plaintiffs' motion papers, the 18% rate is the "rate set in the applicable rules adopted by the plan as Restated and Amended Agreement and Declaration of

14

Trust for the Local 807 Labor-Management Pension Fund." Id. at 7; see Article IV, Section 6 of the Trust Agreement, Exh. A to Casanova Aff. ¶ 4. Plaintiffs' motion for a default judgment does not include a detailed explanation of their interest calculations, but it includes a footnote stating that the sum of $124,756.80 was "calculated by taking 18% of [$]100,868, dividing by 365 for the per diem interest rate, and then multiplying the per diem rate by the 457 days that have elapsed."[5] ECF No. 23-4 at 7, n.1.

To calculate interest on unpaid contributions in ERISA cases, district courts in this Circuit have (1) multiplied the interest rate prescribed under the plan by the total amount of delinquent contributions divided by 365; and (2) multiplied that amount by the number of delinquent payment days. See Ferrara v. Reliable Indus. II, Inc., No. 11 Civ. 1434 (ENV) (MDG), 2012 WL 6851088, at *5 (E.D.N.Y. Sept. 27, 2012), report & recommendation adopted, No. 11 Civ. 1434 (ENV) (MDG), 2013 WL 146085 (E.D.N.Y. Jan. 14, 2013); Gesualdi v. Interstate Masonry Corp., No. 12 Civ. 0383 (NGG) (VMS), 2014 WL 1311709, at *11 (E.D.N.Y. Mar. 28, 2014).

Here, Plaintiffs incorrectly state that 457 days elapsed between April 1, 2022 and October 19, 2023. The period between Defendant's first missed quarterly payment on April 1, 2022 and the filing of the motion for default judgment on October 19, 2023 corresponds to 566 days. Based on the Plan's prescribed interest rate of 18%, the Court applies the following calculation:

($446,565.00 * 0.18) / 365 = $220.22

$220.22 * 566 = $124,646.69

---

[5] Plaintiffs do not explain how they found the amount of $100,868.00, nor why they used that amount to calculate an 18% interest rate on the total withdrawal liability amount of $446,565.00. As shown below, the Court calculated the interest rate based on the $446,565.00 amount.

15

The Court thus finds that Plaintiffs are entitled to interest in the amount of $124,646.7 through October 19, 2023, with interest continuing at a rate of $220.22 per day from October 20, 2023, until the day judgment is entered.

### 3. Liquidated Damages

Plaintiffs seek to recover "the greater of liquidated damages in the amount of twenty percent (20%) of [Defendant's] outstanding withdrawal liability, or additional interest in an amount equal to the interest described above[.]" ECF No. 1 ¶ 24. Basing their calculation on the previously erroneous interest amount stated above, Plaintiffs claim that "[t]wenty percent (20%) of $100,868 is $89,313. This amount is less than the interest calculated at eighteen (18%) per annum from April 1, 2022 through October 19, 2023, or $124,756.80. Therefore, the Trustees are entitled to $124,756.80 in additional interest." ECF No. 23-4 at 8.

As stated above, ERISA provides for additional interest or liquidated damages on unpaid contributions in "an amount equal to the greater of—(i) interest on the unpaid contributions; or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C).

In this case, although their calculations are erroneous, Plaintiffs are correct that 20% of Defendant's unpaid contributions amounts to $89,313.00 ($446,565.00 * 0.2). Because this Court's calculation of Plaintiffs' interest is higher than $89,313.00, this Court respectfully recommends that Plaintiffs also be awarded liquidated damages in the amount of $124,646.70. Since interest continues to accrue, Plaintiffs are also entitled to liquidated damages based on the interest calculation at the rate of $220.22 per day from October 20, 2023 until the day judgment is entered.

16

### 4. Attorneys' Fees

Plaintiffs seek attorneys' fees in the amount of $10,650.00, which corresponds to 17.75 hours of work at an hourly rate of $600. See ECF No. 23-4 at 8. According to Plaintiffs, "this firm has charged and the Trustees have paid an hourly rate of $600 an hour. This is a blended rate that encompasses work performed by both partners and associates at the firm." Id. Plaintiffs' motion for a default judgment includes a copy of their attorneys' invoice, which only shows work performed by Plaintiffs' counsel Leo Gertner, an associate at Friedman & Anspach. See 23-1, Exh. DD. During the Court telephone conference in July 2024, Mr. Gertner confirmed that the requested attorneys' fees are only for his work. See ECF No. 27 at 4:12-25, 5:1-4.

"In assessing whether claimed legal fees are reasonable, the Court must first determine the 'presumptively reasonable fee' for an attorney's services." Ferrara v. Heavy Constr. Lumber, Inc., No. 21 Civ. 2562 (DG) (CLP), 2022 WL 1085380, at *6 (E.D.N.Y. Jan. 5, 2022), report & recommendation adopted, No. 21 Civ. 2562 (DG) (CLP), 2022 WL 620617 (E.D.N.Y. Mar. 2, 2022) (citing Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 552-53 (2010)). "To calculate the presumptively reasonable fee, a court must first determine a reasonable hourly rate for the legal services performed." PCM Contracting Corp., 2022 WL 584536, at *9 (E.D.N.Y. Feb. 3, 2022). "In ERISA matters, courts in the Eastern District of New York have approved hourly rates for partners from $200 to $450 per hour . . . and rates ranging from '$200 to $300 for senior associates, $100 to $200 for junior associates, and $70 to $80 for legal assistants.'" Id. (citing Finkel v. Captre Elec. Supply Co., No. 14 Civ. 3584, 2015 WL 5316257, at *6 (E.D.N.Y. July 31, 2015)); see Ferrara, 2022 WL 1085380, at *7 (finding that rates for work done in relation to motions for default judgment in ERISA matters in this district generally range from $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for

17

junior associates). "However, courts have 'accounted for the relative simplicity of ERISA default cases by consistently approving rates that are closer to the lower end of this range.'" Id. (citing Captre Elec. Supply Co., 2015 WL 5316257, at *6); see Ferrara, 2022 WL 1085380, at *7 (finding that the attorneys' fees requested from the plaintiff's counsel were "somewhat higher than those normally awarded for simple ERISA default cases").

As to the reasonableness of the number of work hours claimed for attorneys' fees in ERISA default cases, courts in the Eastern District of New York have considered around 20 to 30 hours of work to be reasonable. See id. at *10 (finding that although 32 hours "is slightly higher than the amount of time typically spent on such motions, it is within the range of reasonable hours expended in similar ERISA cases involving default judgment"); Gesualdi v. Torretta Trucking Inc., No. 10 Civ. 1249, 2012 WL 1102803, at *9 (E.D.N.Y. Mar. 12, 2012) (finding "22.8 hours at attorney rates and 6.3 hours at paralegal rates to be reasonable" in an ERISA default judgment action).

Given Mr. Gertner's eight years of experience, the limited level of expertise needed for this default judgment motion and the rates awarded in similar cases, this Court respectfully recommends that Mr. Gertner's fees be adjusted from $600 to $325 an hour. This is a rate similar to that awarded by Judge Cho in Trustees of Loc. 807 Lab.-Mgmt. Pension Fund v. Showtime on the Piers, LLC but accounts for inflation. See 2023 WL 2969298, at *7 (reducing the hourly rate for counsel Leo Gertner from $600 to $300). The Court finds that the number of hours spent on this case, or 17.75 hours, is reasonable. The Court therefore respectfully recommends that Plaintiffs' counsel's fees be granted in the amount of $5,768.75.[6]

---

[6] The Court calculated the recommended attorneys' fees as follows: 17.75 * $325 = $5,768.75.

### 5. Costs

Plaintiffs also request $462.00 in costs for filing fees ($402.00) and fees and costs for process service ($60.00).  See ECF No. 23-1 ¶ 15.  Based on a review of the record, the Court finds these costs to be reasonable, and it respectfully recommends that Plaintiffs be awarded $462.00 in costs.

In sum, the Court respectfully recommends that plaintiff be awarded $6,230.75 in attorneys' fees and costs.

### III.  CONCLUSION

For the foregoing reasons, this Court respectfully recommends granting in part Plaintiffs' motion for default judgment against Defendant on Plaintiffs' ERISA claims and awarding plaintiffs the following relief: (1) $446,565.00 in withdrawal liability; (2) $124,646.70 in interest plus interest accruing at $220.22 per day from October 20, 2023 until the day judgment is entered; (3) $124,646.70 in liquidated damages plus liquidated damages accruing at $220.22 per day from October 20, 2023 until the day judgment is entered; and (4) $6,230.75 in attorneys' fees and costs.  In total, the Court respectfully recommends that Plaintiffs' motion for a default judgment be granted, that Plaintiffs be awarded against Defendant $702,089.15, plus interest as listed above, and that judgment be entered in this amount.

### IV.  OBJECTIONS

A copy of this report and recommendation will be electronically served on counsel.  The Court will mail a copy of this report and recommendation to Defendant Showtime on the Piers, LLC at 711 12th Avenue, New York, NY 10019; 55 Beach Lane, Westhampton, NY 11978; and 13924 Marquesas Way, Apt. 2324, Marina del Rey, CA 90292-6021.

Any objections to the recommendations made in this report must be filed with the Court within 17 days after the filing of this report and recommendation. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72; Miller v. Brightstar Asia, Ltd., 43 F.4th 112, 120 (2d Cir. 2022) (stating that, "although Rule 72 applies only to the district court's review of a report and recommendation, this court has adopted the rule that when a party fails to object timely to a magistrate [judge]'s recommended decision, it waives any right to further review of that decision") (internal citation & quotations omitted).

Dated: Brooklyn, New York
August 13, 2024

*Vera M. Scanlon*
Vera M. Scanlon
United States Magistrate Judge